# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| RAYMOND McGOVERN | ) | |
| 6204 N. 12th Street | ) | |
| Arlington, VA 22205 | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 14-215 |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| JOHN F. KERRY, in his official capacity | ) | |
| as Secretary of State, | ) | |
| U.S. Department of State | ) | |
| 2201 C Street, NW | ) | |
| Washington, D.C. 20520 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CHRISTOPHER BROWN, Badge No. 018, | ) | |
| in his individual and official capacities, | ) | |
| The George Washington University Police | ) | |
| Department | ) | |
| Rome Hall | ) | |
| 801 22nd Street, NW, Suite 101 | ) | |
| Washington, D.C. 20052 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MICHAEL GLAUBACH, in his individual | ) | |
| and official capacities, | ) | |
| The George Washington University Police | ) | |
| Department | ) | |
| Rome Hall | ) | |
| 801 22nd Street, NW, Suite 101 | ) | |
| Washington, D.C. 20052 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JAMIE BARTON, in her individual and | ) | |
| official capacities, | ) | |
| The George Washington University Police | ) | |
| Department | ) | |
| Rome Hall | ) | |
| 801 22nd Street, NW, Suite 101 | ) | |
| Washington, D.C. 20052 | ) | |

| | )  |
|---|---|
| and | ) |
| | ) |
| THE GEORGE WASHINGTON | ) |
|   UNIVERSITY, | ) |
| 2121 Eye Street, NW | ) |
| Washington, D.C. 20052 | ) |
| | ) |
|   Defendants. | ) |
| _____ | ) |

## COMPLAINT

**(First Amendment – Unlawful Police Misconduct to Retaliate Against Protest and Protected Activity; Fourth Amendment – Excessive Force and Wrongful Arrest; Injunctive Relief Prohibiting State Department Directive That Law Enforcement Stop and Question Plaintiff on Sight)**

## PRELIMINARY STATEMENT

1. On February 15, 2011, Plaintiff RAYMOND McGOVERN ("McGOVERN") attended a State Department major foreign policy announcement delivered by then-Secretary of State Hillary Clinton ("Clinton") at The George Washington University ("GWU") in which she announced the U.S. government's official policy regarding "Internet Freedom," and in which she was admonishing other governments that they should not arrest protestors and suppress free expression and dissent. Mr. McGOVERN, an audience member, engaged in a peaceful display of dissent against Secretary Clinton's war policies and intervention in the Middle East by standing silently with his back turned towards Secretary Clinton while wearing a t-shirt with the words, "Veterans for Peace."

2. As Secretary Clinton was reading from her prepared remarks regarding Egypt's dictatorship saying, "Then the government pulled the plug," the then-71-year-old McGOVERN was forcibly and falsely arrested by GWU police officers, grabbed by the head, assaulted, and as Secretary Clinton continued undisturbed stating, "the government

2

… did not want the world to watch," Mr. McGOVERN was removed from public view with excessive and brutal force, taken to jail, and left bleeding with bruises and contusions.

3. The Department of State then opened an investigation into Plaintiff McGOVERN, including specifically his lawful, protected political beliefs, activities, statements and associations which it kept open for nearly seven months, despite all charges having been dropped against Mr. McGOVERN and despite having determined that Mr. McGOVERN was engaged in no criminal activity.

4. The Department of State issued a Be On The Lookout Alert ("BOLO Alert") for the then-71-year-old McGOVERN which described his "considerable amount of political activism, primarily anti-war," displayed his picture and directed law enforcement that if Mr. McGOVERN was encountered, "USE CAUTION, stop" and question him and contact the Department of State Diplomatic Security Command Center for the Protective Intelligence Investigations Division Duty Agent – a clear infringement on Mr. McGOVERN's Fourth Amendment right to be free from unreasonable stop and seizure. Lacking any suspicion of criminal activity the State Department targeted him for law enforcement activity based on protected expression.

5. Mr. McGOVERN, 74, is a veteran Army officer who also served as an analyst with the Central Intelligence Agency for 27 years. Mr. McGOVERN wrote for the President's daily brief under Presidents Nixon and Ford. From 1981 to 1985, he personally briefed this publication in the morning one-on-one to Vice President George H. W. Bush, the Secretaries of State and Defense, and other senior officials of the administration of Ronald Reagan.

6. Upon retirement in early 1990, Mr. McGOVERN was awarded the Intelligence Commendation Award for his particularly commendable service and received a laudatory farewell letter from then-President George H. W. Bush.

7. Thirteen years later, Mr. McGOVERN co-founded Veteran Intelligence Professionals for Sanity to expose that intelligence was being falsified by the U.S. government to justify war on Iraq.

8. Mr. McGOVERN's silent act of dissent at Secretary Clinton's speech was an expression of his anti-war political views in opposition to Secretary Clinton's track record and policies concerning the Middle East. Mr. McGOVERN's silent protest was in a long tradition of bearing "silent witness" as an act of peaceful non-violent dissent.

9. While Mr. McGOVERN remained standing, Secretary Clinton carried on with her speech, never even pausing. Mr. McGOVERN's silent act of dissent did not disrupt her talk, nor did his silent protest prevent or impede the orderly conduct of the event.

10. In addition to being falsely arrested while engaging in silent dissent, Mr. McGOVERN was forcibly grabbed and physically attacked including being immediately contorted by force, seized by the head and put in a headlock, without cause or legal justification, by GWU Officer Defendants CHRISTOPHER BROWN and MICHAEL GLAUBACH in retaliation for his lawful protected First Amendment activity. As a result of this use of excessive and unreasonable force, Mr. McGOVERN was covered with bruises, lacerations and contusions inflicted in the unlawful and excessive physical assault, seizure and arrest.

11. After he was subjected to false arrest without lawful justification and excessive and unreasonable force, Mr. McGOVERN was interrogated about his political activities and

associations by a female who, on information and belief, was a Lead Agent with the Protective Intelligence Investigations Division of the Diplomatic Security Service ("DS/PII"), the law enforcement arm of the U.S. Department of State.

12. The Protective Intelligence Investigations Division of the Department of State opened and conducted an investigation into Mr. McGOVERN that focused on his lawful political associations with Veterans for Peace and Veteran Intelligence Professionals for Sanity, and his appearances on CNN and other media discussing his political views as well as his articles critical of U.S. military policy. This investigation of Mr. McGOVERN's lawful protected First Amendment activity was conducted even though the DS/PII had searched its databases and found no criminal history for Mr. McGOVERN. This investigation was kept open for almost seven months following Mr. McGOVERN's arrest at GWU even though the Department of State lacked any reasonable suspicion that Mr. McGOVERN was engaged in criminal activity.

13. In addition to the questioning about and investigation of Mr. McGOVERN's lawful political associations and activities, the Department of State also issued a BOLO Alert on Mr. McGOVERN targeting Mr. McGOVERN for action based on protected expression, burdening his freedom of expression under the First Amendment.

14. Plaintiff brings this action under 42 U.S.C. § 1983 for violations of his First and Fourth Amendment rights to the United States Constitution and the laws of the District of Columbia.

**JURISDICTION**

15. This civil rights action is brought pursuant to 42 U.S.C. § 1983 and § 1988. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1343(3) and (4) (Civil Rights).

16. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 – 2202 and Rule 57 of the Federal Rules of Civil Procedure.

17. Venue is proper in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391 as the District of Columbia is a judicial district in which the Defendants reside and a substantial part of the events or omissions giving rise to the claims occurred in the District of Columbia.

## PARTIES

### Plaintiff

18. Plaintiff RAYMOND McGOVERN is a resident of Virginia. While engaged in a non-disruptive silent expression of dissent he was subjected to the harms, injuries and violations described herein.

### Defendants

19. JOHN F. KERRY is the Secretary of the Department of State, an agency of the U.S. Government with law enforcement authority. He is sued in his official capacity for purposes of injunctive relief relating to the Department of State BOLO Alert directive to law enforcement to stop and question Mr. McGOVERN upon sight.

20. Defendant CHRISTOPHER BROWN, Badge No. 018, is and/or was, at all times relevant herein, an officer, employee and agent of The George Washington University Police Department ("GWPD") as a Special Police Officer and/or Campus Police Officer.

Defendant BROWN jointly caused and participated in the arrest and the use of excessive and unreasonable force against Plaintiff McGOVERN.

21. Defendant BROWN is sued in his individual and official capacities.

22. Defendant MICHAEL GLAUBACH is and/or was, at all times relevant herein, an officer, employee and agent of The George Washington University Police Department as a Special Police Officer and/or Campus Police Officer. Defendant GLAUBACH jointly caused and/or participated in the unlawful arrest and the use of excessive and unreasonable force against Plaintiff McGOVERN.

23. Defendant GLAUBACH is sued in his individual and official capacities.

24. Defendant JAMIE BARTON is and/or was, at all times relevant herein, an officer, employee and agent of The George Washington University Police Department as a Special Police Officer and/or Campus Police Officer. Defendant BARTON jointly caused and/or participated in the unlawful arrest of Plaintiff McGOVERN.

25. Defendant BARTON is sued in her individual and official capacities.

26. Defendants BROWN, GLAUBACH and BARTON are, and were, at all times relevant herein, acting under color of law.

27. Defendant THE GEORGE WASHINGTON UNIVERSITY is a congressionally chartered corporation and private university, with its principal place of business at 2121 Eye Street, NW, Washington, D.C., 20052. GWU is competent to sue and be sued in the District of Columbia.

## FACTUAL ALLEGATIONS

28. On February 15, 2011, Plaintiff McGOVERN engaged in a silent expression of dissent by standing with his back turned to Secretary Clinton as she began what the State

7

Department called "a major foreign policy speech" titled, "Internet Rights and Wrongs: Choices & Challenges in a Networked World," on the GWU campus in the Jack Morton Auditorium. The State Department chose The George Washington University as the location for its public announcement of U.S. policy and Secretary Clinton stood in front of flags bearing the seal of the Department of State.

29. The State Department's new policy being announced that day had been, according to the New York Times, "a year in the making." Mark Landler and Brian Knowlton, *New York Times,* "U.S. Policy to address Internet Freedom," February 14, 2011.

30. The event was open to all members of the public who registered their attendance in advance. Registration was permitted on a first-come, first-served basis.

31. Mr. McGOVERN was on a list of those registered to attend the public speech by Secretary Clinton and was allowed to enter the auditorium after passing through a security screening and displaying identification.

32. Plaintiff McGOVERN's silent expression of dissent expressed his political views in opposition to Secretary Clinton's aggressive interventionist policies in the Middle East and the uncritical adulation being afforded Secretary Clinton.

33. As the speech started many audience members demonstrated their support for Secretary Clinton by standing and clapping.

34. Mr. McGOVERN remained standing in silent protest and turned his back on Secretary Clinton.

35. Secretary Clinton carried on with her speech undisturbed. Secretary Clinton was not impeded or disrupted in any way in delivering her speech because of Mr. McGOVERN's silent expression of dissent.

8

36. As Plaintiff McGOVERN engaged in this silent act of lawful dissent, he did not incite others to disorder or imminent riot, violence, provocation, or threaten a breach of the peace.

37. Defendant officers BROWN and/or GLAUBACH, with the GWU Police Department, were directed by an unknown individual, whose name has been redacted from arrest records, to the fact that Mr. McGOVERN was standing up with his back facing Secretary Clinton, according to the GWU Police Department's Incident Report.

38. Defendant officers BROWN and GLAUBACH then responded to the auditorium where the speech was occurring and falsely placed Mr. McGOVERN under custodial arrest for disorderly conduct according to The George Washington University Police Department's Incident Report.

39. Defendants BROWN and GLAUBACH falsely arrested Mr. McGOVERN without probable cause or legal justification.

40. Defendants BROWN, who was in uniform, approached Mr. McGOVERN, who has gray hair and was 71 at the time of this incident, from behind and out of his field of vision.

41. Defendant BROWN came into the aisle where Mr. McGOVERN was silently standing with his back to Secretary Clinton and stood behind Mr. McGOVERN.

42. Defendant BROWN, according to The George Washington University's official statements, told Mr. McGOVERN to leave.

43. Mr. McGOVERN, who suffers from hearing loss, did not hear a statement issued from behind him.

44. Without providing Mr. McGOVERN time and meaningful opportunity to comply with any directive reportedly given to him, BROWN seized Mr. McGOVERN by forcibly

grabbing Mr. McGOVERN by the arm and jerking him sideways over and into sitting
audience members with enough force that Mr. McGOVERN was bent forward and pulled
towards the aisle. There was no lawful basis to direct Mr. McGOVERN to leave, no
lawful basis to eject Mr. McGOVERN, and no lawful basis to seize and arrest Mr.
McGOVERN.

45. As Defendant BROWN, still not visible to Mr. McGOVERN and standing behind him,
grabbed Mr. McGOVERN and yanked him toward the aisle, Defendant GLAUBACH,
who was not in uniform and was dressed in civilian clothes, approached from the front
and side, and also forcibly assaulted Mr. McGOVERN by grabbing him around the neck
and twisting his head, placing Mr. McGOVERN into a type of headlock.

46. Defendants BROWN and GLAUBACH lifted and jerked Mr. McGOVERN into the aisle
of the auditorium including by yanking him by the head. Defendants forced Mr.
McGOVERN down the aisle and contorted his body into a position of duress such that it
was painful and awkward for him to move down the aisle.

47. With only GLAUBACH, in plainclothes, in his peripheral field of vision, Mr.
McGOVERN cried out "Who are you?" as he was assaulted. Mr. McGOVERN also cried
out, "This is America!" "I was just standing silently," and "You're breaking my arm."

48. Defendant BROWN and GLAUBACH forcibly contorted Mr. McGOVERN's upper
body into a bent over position through their hold around his neck, arms, shoulders and
upper torso.

49. They brought him outside the auditorium where he was placed in two sets of metal
handcuffs.

10

50. Defendant BARTON first encountered BROWN and GLAUBACH after they had placed Mr. McGOVERN under custodial arrest for disorderly conduct, according to the GWU Police Department's Incident Report. BARTON is identified in Metropolitan Police Department records also as an arresting and/or processing officer.

51. Mr. McGOVERN was charged with the offense of "Disorderly Conduct – Disruption of a Gathering or Congregation." D.C. Code § 22-1321(b).

52. Under D.C. Code Sec. 22-1321(b), the offense of disorderly conduct requires a person to engage in loud, threatening or abusive language, or disruptive conduct, with the intent and effect of impeding and disrupting the orderly conduct of a lawful public gathering, or a congregation of people engaged in any religious service or in any worship, funeral or similar proceeding.

53. In response to the Disorderly Conduct Amendment Act of 2010, the D.C. Metropolitan Police Department ("MPD") issued a Circular, CIR-11-01, (effective January 21, 2011) to inform officers of the amendments and instruct all officers enforcing the law about legal requirements in the amended law, including the provision pursuant to which Plaintiff was arrested.

54. As reflected in the circular, the offense of "Disrupting a Gathering or Congregation" requires that "[t]he person must have both the intent and the effect of impeding or disrupting the event." D.C. MPD CIR-11-01 at 8, Sec. (G). "The person's conduct must be loud, threatening, abusive, or disruptive. Merely standing quietly near an event with a sign with non-threatening or abusive language would not be a violation." *Id.*

55. Special Police Officers, including BROWN, GLAUBACH and BARTON (also referred to herein as Campus Police Officers) are appointed by the Mayor upon the application of

any corporation or individual for duty in connection with the property of, or under the charge of, such corporation or individual. *See* D.C. Code § 5-129.02.

56. Special Police Officers are amenable and subject to the rules laid down for the government of the D.C. Metropolitan Police Department ("MPD") and possess the same powers as a law enforcement officer to conduct warrantless arrests for offenses committed within premises to which their jurisdiction extends. D.C. Code §§ 5-129.02, 23-582(a).

57. Mr. McGOVERN's silent expression of dissent at Secretary Clinton's speech was not conduct that was likely to produce violence on the part of others or threaten a breach of the peace.

58. Mr. McGOVERN did not engage in disorderly conduct.

59. Mr. McGOVERN had not violated any law.

60. There was not probable cause to arrest Mr. McGOVERN.

61. Plaintiff was subjected to excessively tight and painful handcuffing, including with two sets of metal handcuffs, which cut and bruised his wrists and caused him to bleed. Mr. McGOVERN informed the officers who detained and arrested him that he needed medical assistance because he was bleeding from the handcuffs. A police officer ridiculed him for bleeding.

62. He had bruising, scrapes and swelling in his wrists from the handcuffs, and contusions and bruises on his body for weeks after his arrest.

63. Once outside the auditorium in metal handcuffs, Mr. McGOVERN was patted down and searched by a female officer. Plaintiff asked if one of the male officers present could perform the pat down and search, but the officers laughed in response.

12

64. While in custodial arrest Mr. McGOVERN was questioned about his First Amendment protected political beliefs, associations and activities by an individual who, on information and belief, was a Lead Agent with the Protective Intelligence Investigations Division of the Diplomatic Security Service of the Department of State.

65. The Bureau of Diplomatic Security is the security and law enforcement arm of the U.S. Department of State. Diplomatic Security ("DS") has offices throughout the United States staffed with special agents and contract investigators.

66. The Diplomatic Security Protective Intelligence Investigations Division uses law enforcement databases and coordinates with federal and local law enforcement agencies and its uniformed division to carry out its mission.

67. Following questioning by the DS/PII at GWU, Mr. McGOVERN was seen by an emergency medical technician or individuals who he believed to be with GWU. He was given gauze for his bleeding wrists.

68. Mr. McGOVERN was then taken into custody by uniformed MPD personnel and transported to the MPD Second District. He was held there for a few hours and released with a citation for disorderly conduct.

69. After he was released from the MPD, Mr. McGOVERN sought medical attention at Virginia Hospital Center in Arlington for the injuries described herein.

70. Mr. McGOVERN's disorderly conduct charge was "no papered."

71. The Department of State Protective Intelligence Investigation unit developed a report about Mr. McGOVERN's background and political reasons for engaging in dissent during Secretary Clinton's speech, his lawful political associations with Veterans for Peace and Veteran Intelligence Professional for Sanity, and detailed information about

his prior political activities, including several media features where he discussed his
political views on U.S. military policy, details about political protests he had participated
in, and included specifics about some of his political writings. The Intelligence report by
the Department of State's law enforcement division further noted that "McGovern does
seem to have the capacity to capture a national audience – it is possible his former career
with the CIA has the potential to make him 'attractive' to the media."

72. The DS/PII investigation specifically noted that there was no criminal history found for
Mr. McGOVERN.

73. The DS/PII further investigated Mr. McGOVERN, including, but not limited to,
contacting other federal agencies to determine if they had records of Mr. McGOVERN.

74. The DS/PII investigation of Mr. McGOVERN's lawful protected First Amendment
activities was conducted even though DS/PII had searched its databases and found no
criminal history for Mr. McGOVERN. The investigation was conducted and remained
open for almost seven months following Mr. McGOVERN's arrest at GWU even though
DS/PII had no reasonable suspicion that Mr. McGOVERN was engaged in criminal
activity and despite the fact that all charges had been dropped against Mr. McGOVERN.

75. As a result of Mr. McGOVERN's silent expression of dissent at GWU, the Department of
State's Protective Intelligence Investigation division also issued a BOLO Alert
concerning Mr. McGOVERN which, in addition to detailing his false arrest at the
Secretary Clinton speech for engaging in silent dissent, noted his background as a former
CIA analyst and member of the U.S. Army, his First Amendment protected political
beliefs, activities and associations including the fact that Mr. McGOVERN has been
involved in a "considerable amount of political activism, primarily anti-war." The DS/PII

14

BOLO Alert directed that based on this past lawful political activism if Mr. McGOVERN

was encountered officials should "USE CAUTION, stop and conduct a field interview,

contact the DS Command Center at [] and request the PII Duty Agent."

76. The BOLO Alert does not merely direct that officers "Be On the Lookout" for Mr.

McGOVERN, but orders law enforcement to initiate a stop and seizure of Mr.

McGOVERN. The BOLO Alert constitutes a standing directive that he be stopped and

seized in the absence of reasonable suspicion or probable cause that he is committing an

offense.

77. By issuing the BOLO Alert, the Department of State targeted Mr. McGOVERN for law

enforcement action and infringement on his Fourth Amendment rights based on protected

expression. Such action burdens Mr. McGOVERN's freedom of expression under the

First Amendment.

78. The Department of State chose to use The George Washington University for the venue

to carry out its government function of presenting a major public policy announcement

and from which it would broadcast its announcement live around the world. On

information and belief, the Department of State participated in the management of the

event.

79. GWU maintains a policy or custom that it permits demonstrations and displays of support

by audience members for an invited speaker, and it bans demonstrations and displays of

dissent from audience spaces regardless of whether such dissent is disruptive or, as in this

case, non-disruptive and silent.

80. The Department of State and GWU had, at least, a tacit understanding or agreement that

GWU police would enforce such policy or custom of ejecting dissenting expressions

from the audience space during Secretary of State Clinton's public policy announcement and speech regarding other government's suppression of free speech, communications and association.

81. GWU police acted as the agents of the Department of State and/or in joint action with the Department of State, in furtherance of the above-referenced agreement, when the police forcibly arrested Mr. McGOVERN, suppressed and ended his free speech expression, and removed his from the event.

82. The President of THE GEORGE WASHINGTON UNIVERSITY and, on information and belief, other GWU administrative officials who are final policymakers on behalf of GWU, were personally present at Secretary Clinton's speech and for the events described here and also witnessed, ratified and/or at least tacitly approved the actions taken against Mr. McGOVERN described herein.

83. As a consequence of the acts complained of herein, Plaintiff has suffered personal injury including loss of liberty, deprivation of constitutional rights, emotional distress, and physical and non-physical injuries.

**VIOLATIONS OF CLEARLY ESTABLISHED LAW**

84. The actions of the above-referenced Defendants violated clearly established and well settled federal constitutional rights, including:

   a. Freedom from the unreasonable seizure of one's person, including through unreasonable and excessive use of force;

   b. Freedom from retaliation for engaging in constitutionally protected activity in the absence of any intent to cause disruption, or actually cause disorder or imminent riot, violence, provocation, or threaten a breach of the peace; and

16

    c.   Freedom from government disruption of, interference with, abridgement of free speech, assembly, petition activities and other First Amendment protected activities.

85. Clearly established law was violated by the arrest of Plaintiff for disorderly conduct in the absence of probable cause.

86. Clearly established law was violated by Defendants BROWN and GLAUBACH with respect to the use of excessive and unreasonable force. Plaintiff McGOVERN had a clearly established constitutional right to not be physically assaulted by police gratuitously. Clearly established law prohibited the use of unreasonable seizures and unreasonable and excessive use of force, and was violated by the physical assault which was completely without legal cause, justification or excuse, and was objectively unreasonable and excessive given the circumstances.

87. As a direct and proximate result of the acts or omissions of the Defendants identified herein, Plaintiff has suffered personal injury and harm including deprivation of constitutional rights under the First and Fourth Amendments to the U.S. Constitution, loss of liberty, as well as physical harm, emotional pain and suffering.

**COUNT I**
**False Arrest**
**(First and Fourth Amendments to the U.S. Constitution; 42 U.S.C. § 1983)**

88. Paragraphs 1 - 87 are incorporated by reference as if set forth herein.

89. Defendants BROWN and GLAUBACH arrested Plaintiff McGOVERN, in furtherance of THE GEORGE WASHINGTON UNIVERSITY'S policy or custom of prohibiting demonstrations of dissent from audience areas as described above.

17

90. Defendant BARTON participated in the arrest of McGOVERN and acted jointly with BROWN and GLAUBACH to cause the false arrest of McGOVERN.

91. Defendants BROWN, GLAUBACH, BARTON and THE GEORGE WASHINGTON UNIVERSITY acted as agents of, and in joint action with, the U.S. Government DEPARTMENT OF STATE to abridge the free speech rights of McGOVERN under the First Amendment to engage in protected expressive activities.

92. Defendants BROWN, GLAUBACH and BARTON, as Special Police Officers and/or Campus Police Officers, acted under color of state law.

93. The arrest of McGOVERN as he stood silently expressing dissent violated his rights under the First and Fourth Amendments to the U.S. Constitution. *See also* 42 U.S.C. § 1983. The arrest was in the absence of probable cause and constituted an unconstitutional false arrest and effected an abridgment of his free speech rights.

**COUNT II**
**Excessive Force**
**(First and Fourth Amendments; 42 U.S.C. § 1983)**

94. Paragraphs 1 - 87 are incorporated by reference as if set forth herein.

95. The use of force, and excessive and unreasonable force by Defendants BROWN and GLAUBACH against Plaintiff McGOVERN was without legal cause, basis, justification or excuse.

96. Defendants' actions, including physically attacking and forcibly assaulting McGOVERN, constituted an unreasonable seizure and use of force, and excessive use of force in violation of the Fourth Amendment. *See also* 42 U.S.C. § 1983.

18

97. The use of force, including but not limited to, the use of handcuffs in such a severe and punitive manner as to lacerate McGOVERN's wrists as well as throughout the forcible intervention against McGOVERN, was excessive and objectively unreasonable.

98. The excessive use of force was, in whole or in part, in retaliation for the fact that 71-year-old McGOVERN stood in silent dissent and silent expression within the audience gallery to Secretary of State Clinton's public policy speech.

**COUNT III**
**(Violation of the First Amendment and Fourth Amendment)**
**INJUNCTIVE RELIEF ENJOINING THE ISSUANCE AND ENFORCEMENT**
**OF THE LAW ENFORCEMENT DIRECTIVE TO STOP, DETAIN AND QUESTION**
**McGOVERN UPON OBSERVATION AND IN THE ABSENCE OF PROBABLE CAUSE**
**OR REASONABLE SUSPICION**

99. Paragraphs 1 - 87 are incorporated by reference as if set forth herein.

100. McGOVERN is the particular object of the stated governmental action, that is the Department of State directive to law enforcement that he be stopped, detained and questioned upon observation. The risk of further adverse treatment is enhanced by the directive that law enforcement "USE CAUTION" when approaching 74-year-old Ray McGOVERN, as if he is a violent or criminal individual.

101. McGOVERN suffers irreparable harm from the stop and interrogate directive, in the loss of his constitutional right to be free of unreasonable stops or police seizures, as well as First Amendment freedoms to engage in dissent without the risk of such unconstitutional law enforcement intervention and seizure. The stop and interrogate directive burdens McGOVERN's engagement in First Amendment expression.

102.     Upon observation by a law enforcement officer with knowledge of the

Department of State Order, McGOVERN will be stopped – as ordered in the directive –

in the absence of reasonable suspicion or probable cause.

103.     If McGOVERN chooses to exercise his ordinary liberty rights to lawfully attend

an event with government officials or foreign dignitaries, or to lawfully approach an

event with such protected persons, or to lawfully exercise his First Amendment rights to

engage in political dissent near such persons or events, he will be forced – minimally – to

be vigilant of law enforcement, knowing that there is such an outstanding directive and,

upon a stop, make the choice of either complying with an unlawful order to stop and be

questioned or risk a hostile law enforcement response were he to disregard such order,

which is especially concerning given the characterization of the need for law enforcement

to "USE CAUTION" when approaching McGOVERN, a caution which suggests he

poses a physical danger to agents upon approach.

104.     The right to move about free of unlawful stops and seizures is protected by the

Fourth Amendment. The right to engage in political speech by appearance or expression

at an event or near government officials or foreign dignitaries is protected by the First

Amendment. These are lost by the stop-and-question directive to law enforcement

regarding McGOVERN in particular.

105.     A person of ordinary firmness would be objectively deterred or chilled from

engaging in lawful First Amendment protected free speech activities with any proximity

to government officials or foreign dignitaries, for concern that s/he would be stopped and

questioned by police in the absence of reasonable suspicion, or at risk for a hostile or

adversarial police encounter given the warning to law enforcement to "USE CAUTION" upon approach, suggesting a dangerous person.

106.    Remedies at law, such as monetary damages, are inadequate to compensate for this injury. Equitable relief including prohibiting the directive to engage in a preemptive and unconstitutional stop of McGOVERN is the only adequate remedy.

107.    There is no hardship to the U.S. Government to be banned from issuing an unconstitutional directive, and the public interest is furthered by such injunctive relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following:

a.  Entry of a declaratory judgment that the arrest described herein constitutes a violation of the First and Fourth Amendments to the U.S. Constitution, and that the use of force against McGOVERN was excessive and unconstitutional;

b.  Entry of a mandatory injunction requiring THE GEORGE WASHINGTON UNIVERSITY to seal and/or expunge all records derived from Plaintiff's arrest, and that THE GEORGE WASHINGTON UNIVERSITY recover and cause to be corrected or expunged all information related to or derived from the false arrest, including where such data has been disseminated to third parties or other law enforcement agencies or governmental units;

c.  Compensatory damages against Defendants BROWN, GLAUBACH, BARTON and THE GEORGE WASHINGTON UNIVERSITY for violations of federal rights pursuant to 42 U.S.C. § 1983 in an amount appropriate to the proof adduced at trial;

d.  Entry of a prohibitory injunction directing that, through the Secretary of State, the U.S. Government shall expunge from its records the BOLO Alert or stop-and-question directive regarding McGOVERN;

e.  An award of Plaintiff's reasonable attorneys' fees and costs and expenses pursuant to 42 U.S.C. § 1988 and any other applicable statutes or rules or law; and

f.  Such other and further relief, including all appropriate and equitable relief, as this Court may deem just and proper.

February 13, 2014                    Respectfully submitted,


  /s/ Carl Messineo
Carl Messineo [450033]
cm@justiceonline.org
PARTNERSHIP FOR CIVIL JUSTICE FUND
617 Florida Avenue, NW
Washington, D.C. 20001
T. (202) 232-1180; F. (202) 747-7747


  /s/ Mara Verheyden-Hilliard
Mara Verheyden-Hilliard [450031]
mvh@justiceonline.org
PARTNERSHIP FOR CIVIL JUSTICE FUND
617 Florida Avenue, NW
Washington, D.C. 20001
T. (202) 232-1180; F. (202) 747-7747


  /s/ Andrea Costello
Andrea Costello [1012538]
ac@justiceonline.org
PARTNERSHIP FOR CIVIL JUSTICE FUND
617 Florida Avenue, NW
Washington, D.C. 20001
T. (202) 232-1180; F. (202) 747-7747